The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. All right, thank you. We're ready to hear argument in our last case today, United States v. Lucas. Ms. Davis, whenever you're ready. I'm Mary Davis, and I'm presenting argument on behalf of the appellant, Troy Lucas. The issue I want to address today is whether the district court erred when it denied the defense request in the transcript of testimony provided in a different trial, and the witness in that trial died long before Mr. Lucas was arrested. In the other trial, Mark Bartlett testified, and this was in the state case, and it led to the conviction of Demetrius Smith for the murder of Robert Long. The defense sought to admit the transcripts under Federal Rule of Evidence 807 in order to establish the defense that another person besides Lucas committed the crime. According to Rule 807, the statements are admissible if there is an equivalent circumstantial guarantee of trustworthiness. It is offered... Ms. Davis, so the fact that Smith's conviction was vacated, is that some indication then that the testimony of Mr. Bartlett is not trustworthy? I don't think so. I think the reason that the conviction was vacated was because the federal prosecutors decided it wasn't trustworthy, and there was nothing about his testimony in the trial that proved that it was not trustworthy. Indeed, I think the case law demands that you not look at any other evidence in any other case or trial other than the statement itself. Also, according to Rule 807, the court... And by the statement itself, do you mean his actual testimony? His actual testimony at both the motions hearing and at trial. Now, also according to Rule 807, courts can consider evidence that corroborates the statement. And in this case, in Mr. Lucas's trial, there was testimony from a witness who gave a description of the assailant that was very much like the description given by... Yes? So, I'm sorry. I think maybe I misunderstood you there. Because you said on the first hand you can only consider the statement, and then you said you can consider corroborating evidence. According to the rule, you can consider evidence that corroborates the statement. That's right in Rule 807. Otherwise, case law... But wait a second. It says corroborate or not, but that's the current version of the rule. That's not the version of the rule that was in place when this trial took place. Because that version of the rule referring to corroborating evidence only came into place in December of 2019. The version in effect in your trial did not say that at all. That's what I'm... And I do apologize. You are correct, Your Honor, that yes, this was a later version of Rule 807. And therefore, we will fall back on the position that the court could not consider any other evidence or any other happenings in regard to the statement. But what the court did in this case is the court looked at the statement and made the decision it wasn't credible. First, the court said that the attorney who did the cross-examination did a very poor, poor job of cross-examination. Now, I think if you look through the transcripts of the cross-examination, the judge did a very, very... I mean, the defense attorney did a very thorough job of cross-examination. And I lay out these points. I believe it's in page 16 of my opening brief. You agree that that is... I mean, that's a factual finding by the district court. But that it can be considered, even under the old Rule 807, as part of the trustworthiness of the statement. So the degree and nature of the cross-examination, you agree that's corroborating or not, that can be considered? Not in the way the district court judge considered it in this case. The district court judge in this case said, well, if this witness had come before this court and this prosecutor, well, then it would have been a very different... Right. And also, and based on what the government in this case is now telling me, which is, I assume you would argue, not an appropriate consideration at this point. Is that right? Exactly. Exactly. It's not appropriate at all. And in fact, the judge considered not only evidence from what the government was arguing, but the judge looked at happenings that weren't even any part of any court proceeding. And that was where one of the witnesses in the Smith trial said that, you know, that isn't what happened. And she withdrew what she was saying. And the judge also considered the... So help me understand why that can't be considered. Because I read Shaw and Idaho, which is based, to the extent you think that, as being limited to corroborating evidence offered in the current trial. Not that you can't look at other indications of trustworthiness that are not being presented in the current trial. So, for example, you can look at the fact that the conviction was vacated by a judge, that it was a wrongful conviction, that there were retractions. All of that sort of indicators are not being presented in the current trial, which was what Shaw suggests maybe the court can't do. But instead are indicators of whether the statement itself was trustworthy. And so I can't understand why you're arguing that those... I understand you disagree with them, but why can't they even be considered? Because the way they were considered by the judge was improper. Okay, but you agree they could be considered, he just needed to do it in a better way. I don't believe that they can be considered. No, I don't. I think one of the biggest problems that the judge relied upon, and the prosecutor pushed time and time again, was the poll camera. And the poll camera, the judge said, well, you can't overcome this. The prosecutor argued he can't get beyond this forensic evidence. Well, I believe it's the Holmes case that says, no, you can't require a defendant, when there's a defense of another person, you can't exclude that defense solely because a defendant cannot overcome forensic evidence against him, and that he has to raise a reasonable inference of his own innocence. And that is basically what happened here. The judge and the prosecutor relied over and over and over again on the poll camera. Now, the other problem with the poll camera is the government's own witness said it was of poor quality. It was only seconds long at most, and the camera was moving. So to rely so much on the poll camera was inappropriate. And at the same time, the government put on a witness who corroborated, who gave a description, the same description that Mr. Bartlett gave in the Smith trial. And that should carry some weight. So we should consider the corroborating evidence, but not the non-corroborating evidence, is your argument? Well, I mean, there was evidence that didn't corroborate, but I don't think it disputed it. I don't think it showed that it wasn't truthful. And I think when the court looks at the Shaw factors, every one of those factors was satisfied. There was no incentive to lie on Mr. Bartlett's part, even though the government argued there was incentive to lie, because Mr. Smith laughed at Mr. Bartlett when he was getting beat up. Mr. Morales and also Stanley Needleman had great incentives to lie, huge incentives. They just were – yes? Can I go back to the trustworthiness issue? Does the cross-examination to which Mr. Bartlett was subject have to be effective cross-examination, or does he simply have to have been subject to cross-examination for the indicia of trustworthiness to apply? According to Shaw, he has to be subject to cross-examination. Does it parse – I thought Idaho said that it was the effectiveness, not just – because the mere existence is a different rule. Like if you're – there's a different rule that sets forth if you're subject to cross-examination for prior testimony. I thought Idaho suggested that it was effective cross-examination. It did. Yes, it did, Your Honor. But I think – That's the Supreme Court's decision that we're talking about, and that talked about effective cross-examination. Right, and we submit that the district court judge was clearly erroneous when he said it wasn't effective. I lost you again, sorry. It was clearly erroneous when he said it wasn't effective. I mean, the only thing that the government points to is the poll camera, is that the defense attorney in Smith's case and the government in Smith's case, the state, basically said that the time they stipulated that the time on the poll camera was incorrect. And that is the only thing that the judge found any fault in. He didn't – I mean, if you read her cross-examination, it was very effective. She brought up how – why did it take you so long to come to the police? Why did you lie when you were first being questioned? Are you still using drugs? Because it looks like you have needle marks all over your hands and arms. She did a very good cross-examination. She did more than I've seen in many other cases. She worked with what she had, and I think it was therefore effective. I don't know what more she could have done other than maybe the poll camera evidence, which I think is certainly not as strong as the government would have this court to believe. Can you spend a minute addressing the district court's alternative argument that even if this qualified under 807, that the sideshow trial it would bring to impugn the prior conviction was excludable under 403? I don't see how it is excludable. I mean, any time a defendant puts on a defense, it's going to require the government to do more to try to defeat that defense. Here, the government says, oh, we'll have to bring in the witness who recanted, and we'll have to do whatever. But the purpose of a defense is to provide the defense for the defendant, not to make the job easier for the government. And even though the government may have had to take some additional steps, I don't think that was really unreasonable, and I don't think that this evidence is excludable under Rule 403. Ann, are there any further questions? Otherwise, I'll save the rest of my time. It doesn't look like there are further questions, so you do have some time in rebuttal, Ms. Davis. Okay, thank you. And we'll hear from Ms. Wilkinson now. Thank you. Thank you. Good morning, Your Honors Counsel. My name is Sandra Wilkinson. I'm an assistant U.S. attorney, obviously. I was trial counsel in the Lucas case, and I was also trial counsel in the related matter of United States v. Jose Morales, which was affirmed by this court by unpublished opinion back in 2014. Addressing the arguments that Ms. Davis made, I think you have to get to the core of what Judge Titus, a very experienced district judge, did in the course of that hearing as he grappled with the admittedly unusual issue that was before the court. Typically, at least in the cases that are cited in the briefs, the Rule 807 issue comes up when the government is trying to admit testimony under the residual exception, and hence the Shaw opinion, which governs the court's analysis, I believe, in connection with this case. Here, of course, we have the defendant coming forward and trying to admit with that burden of proof of the proponent in an exceptional rare case to put that 807 evidence in. What Judge Titus was trying to understand is, when you look at the facts of the case, how could the government's cross-examination of the now-deceased witness that wouldn't happen be compared with the defense attorney's cross-examination of Bartlett years before? True. But isn't that looking at it in hindsight, which Shaw tells us we're not to do? Well, Your Honor, respectfully, I think we have to look at what all the factors are to determine what the cross-examination would be for the government, because again, this is where it's an exceptional rare case where a defendant is trying to put in hearsay evidence under the residual exception. The court needs to look at the factors that determine trustworthiness, and Shaw instructs us we have to look at what the prior cross-examination was. In fact, Shaw was all about that because the cross-examination was so effective of the two declarants. What would Mr. Bartlett have had to gain by lying in the Smith trial? Your Honor, the testimony would have been that not only that Mr. Bartlett had a motive to lie, but also if the court looks at... What was the motive to lie? That he did not like Mr. Smith because Mr. Smith... Where is this in the record? I believe it's in all the underlying papers, but certainly at JA, I believe, 150. I have to pull it from you, Your Honor, but in the course of all the briefings... He didn't like him because he laughed at him, was that it? When he was beaten up. That's one factor. The second factor is obviously he was hoping to get out of a situation that he was in, which the defense attorney did cross-examine him about. What is it that the defense attorney did not cross-examine about that makes Bartlett's testimony untrustworthy? The video. The CCTV street camera. The government got that video, and what it had argued before, not entirely accurate either, did it? Well, Your Honor, there was a mistake in the record that was corrected, but at the end of the day, Mr. Lucas, in his testimony, had in his... You keep saying, you've mentioned a couple times that what makes this case extraordinary is that the defense is trying to get in this hearsay evidence, but the defense is trying to do that based on the extraordinary conduct of the government. In this case, in the case below, and correcting errors, including allegedly, purportedly convicting someone who wasn't guilty, and I understand that was state versus federal, but still. Well, I certainly hear you, Your Honor. The government worked hard to exonerate Mr. Smith once Mr. Morales and Mr. Needleman came forward and took some effort in that regard, and then, of course, Mr. Morales was convicted after trial and testified in this one. But getting back to the video, the important part of that, Your Honor, and I know it's almost unfathomable to understand as trial lawyers, but the defense attorney and the prosecutor in the state trial literally stipulated away the most key piece of evidence in that case. And what it shows, Your Honor, is exactly whether or not it's... I'm sorry, what was it they stipulated away? They stipulated to the jury that they weren't going to show them the video because it was the wrong time, meaning that it did not capture the time of the murder. That is unfathomable, and I don't think Ms. Davis is actually arguing with that point because you can see the reaction on the tape of the people who called 911 when the shots were fired. They all testified that it all happened at the same time, and then the police arrived. We know exactly when the murder happened, and we know the 20, 30 minutes that happened before then because the camera circulated around, and the things that Mr. Bartlett said he saw are not on that camera, and I have no clue even to this day how that happened in state court. The thing that the defense attorney didn't do that the government would have done is show Mr. Bartlett that video and show how it completely, at least in cross-examination, our ability to do that, how it completely dismantled everything that he said that he saw. So that's the piece in cross-examination that I guess the government is saying should have been done and that makes the initial cross-examination not effective. Is that right? Certainly. That's one way of looking at it. Of course, the other way of looking at it is that the government's cross-examination would not have been marginal, which I think is the phrase that the Shaw Commission used. But how can the government say that now without benefit of, I guess, of hindsight? Well, Your Honor, one of the reasons, we have to be able to say that, right? When we were kind of mooting this around the office and talking about this issue, one of my colleagues came up with this example. What if a witness like Mr. Bartlett had testified that it was snowing that day? And then years went by, we had the same issue, and we know definitively it was not snowing that day. It's on the camera, it's in the weather reports, it wasn't snowing. Would we not be able to cross-examine the witness about all of that if the defense attorney below had not the most key fact in the case? And that's what I'm saying. It would go against the grain of what type of evidence is admissible in court when you don't have the evidence. Did you refresh my recollection about what the federal prosecutors had to correct about that poll camera that you got wrong? So, the poll camera was a circular angle that rotated, and it was a circular camera. And the street corner where Mr. Bartlett said he was, was whether or not there was a man at a payphone or a payphone. And what the government had indicated, in part because Mr. Lucas's statement to law enforcement, was that there wasn't a payphone at that corner for a long time. But we all, of course, we all had the video. It's that it was no man at the payphone, not that there wasn't a payphone, or that it wasn't an operating payphone at the time. That he was on the payphone at the time this happened, and there's no man, no person, no anybody at that corner. And I don't think Ms. Davis would dispute that. I mean, it is clear. It's in the record. We put the video in the record. Whether you look at it in the rotating sense of it, the entire time a person is just not on that street corner. And the error we had to correct was whether it was a man at the payphone versus not a payphone. And which we did do, and the judge considered. And of course, defense had all that evidence at the time, too. It was more a commingling of Mr. Lucas's statement where he said there was no payphone at the statement when he was interviewed on a recorded interview with investigators. And that would have been another... Judge Richardson has a question. Counsel, I take that your argument is that Shaw and Idaho in its own right, although that's a Confrontation Clause case, teach us that we do look at this cross-examination inquiry with hindsight. Because the question is whether cross-examination today would be of marginal value, right? That means looking at it with hindsight, not whether at the time it was effective. So don't those cases suggest to us by definition we're looking at them with hindsight? And so that all of these developments, including vacating the conviction and the like, would be part of that calculus? I believe so, Your Honor, because there's other factors, too, that have developed that were not cross-examined, including Mr. Lucas's statement, Mr. Morales's statement that could have been used to cross-examine. If Mr. Bartlett was alive, that would be available to the government to cross-examine. But I also think we have the former situation, because that one piece of evidence certainly was available at the time and was not made any use of for whatever reason by the defense attorney below. So I think we have, in this particular case, may not have to resolve that issue, but you have both. But we certainly have additional evidence that, in the interest of justice, as we learned along, as opposed to a two-day murder trial in the state case based on two witnesses, the one who recanted and the one who's now dead, and the federal case, which was three weeks of corroboration, a cooperating witness, multiple facts and evidence that went in, that self-corroborated cell site, all of that information, and whether or not that would have been available to the government to be able to cross-examine Mr. Bartlett. Yes, I'm sorry, Your Honor. Do you agree that sort of the inquiry we're engaging in here, the Shaw inquiry, if you would, is never going to be applied again now that 807 has been amended to require consideration of corroborating evidence? I mean, this is sort of a one-off case, in a sense, because at least you all are asking us to apply the Shaw limitation, and we know, at least for trials after December of 2019, the district court isn't prohibited from looking at corroborating evidence. It's required to look at corroborating evidence. Is there anything that we do with that? Which makes sense, right? I mean, I think that it supports the government's position in this case. I agree with you, Your Honor, that the amendment to the rule makes sense in the world, that we shouldn't be able to put on the it's not snowing defense when we know that it's not true. And it doesn't go for the credibility. It's just looking at all the circumstances that a district judge has to make those determinations all the time in deciding whether to admit a particular piece of evidence. And as you can see from reading Judge Titus's transcript, he didn't make this decision lightly, of course, because the defense was proffering it. He had sat in the Morales Tropic War, and he had read Shaw, of course, and he was walking that line about whether the government, and in the interest of justice, whether there was a marginal effect of the government's cross-examination when you compared and contrasted what went before. But you're right, this is a really unique case, and I'm not sure we're going to see these facts as presented anymore. Very unique. Is there any other area that the court would like me to address? Not from... Judge Bell, do you have any other area? I do not, thank you. And Judge Richardson is indicating he doesn't either. Neither do I. Okay, thank you, Your Honors, thank you. All right, thank you, and Ms. Davis? Yes, very briefly, I think the question regarding the amendment to Rule 807, I think this court should take that into consideration when it comes to the analysis of admitting the evidence serves the purposes and the interest of justice. In this case, the defendant was denied a defense. The decision to deny the defense was based on the government's argument that, number one, Mr. Smith was not guilty. They went through all these hoops to get him released and the conviction vacated. It was their... The government was stating over and over about the video. All of this, even if the court considers it, at the same time, this court should consider that Mr. Lucas is entitled to put on the defense. And there was nothing in the testimony by Mr. Smith that should have kept that testimony out. The government very well could have said, okay, well, he wasn't cross-examined regarding the poll camera. And the poll camera shows this, in our opinion. But at the same time, this court should also consider that the government's own witness, number one, said the poll camera was very poor quality and it only showed seconds of what happened. At the same time, you have Mr. Smith's testimony, which was very clear and unwavering, and also his testimony was corroborated by a witness, Ms. Coey, that the government put on as a witness. She explained that she was there, she heard the shots, she saw somebody running. And the person she saw running was a black man who was petite. Mr. Lucas is Caucasian. He's over six foot tall. And I believe he weighs well over, yeah, he weighs 210 pounds. I think that this testimony, if the testimony by Mr. Bartlett had come in together with the testimony of Ms. Coey, then I think the jury quite likely would have found Mr. Lucas not guilty. And I think it is for a jury to decide what the truth is. It is not for the federal government to decide, well, we don't believe him. We're going to drop these charges. We're going to get the conviction vacated. That is not the purpose. That is not what the government is supposed to do. The government is supposed to try its case, but it has to try the case fairly. It has to allow a defense to go forward if there's any reason to believe that the defense is reliable. And in this case, it was reliable. The government could have done what it wanted to try to dispute Mr. Bartlett's testimony. It could have called in the witness who recanted. It could have pointed out the poll camera. The government always disputes evidence, well, not always, but usually disputes evidence put on by the defendant. And in this case, the defendant was denied his constitutional right to present a defense. And under the standard of review, the government has to establish beyond a reasonable doubt that the error was not harmless. And it cannot do that, and it has not done that in this case. And we would ask that the conviction be vacated. All right. Thank you. And thank you both for your arguments, Ms. Davis and Ms. Wilkinson. We always appreciate hearing from both of you and appreciate the fact that we've all been able to accommodate and do this via video. So thank you and have a good rest of your day. And the court will stand adjourned. Thank you.
judges: Stephanie D. Thacker, Julius N. Richardson, Kenneth D. Bell